3 So.2d 50

## OPINION OF THE JUSTICES.
### No. 60.

Supreme Court of Alabama.

June 17, 1941.

Response to questions propounded by Governor.

Questions propounded by the Governor to the Justices of the Supreme Court, under Code 1940, Tit. 13, § 34.

Questions answered.

To the Justices of the Supreme Court of Alabama:

Gentlemen:

Under the provisions of Code, 1940, Title 13, Section 34, I request your opinion on important constitutional questions relating to the use of the surplus of the revenue derived from the State Income Tax for the purpose of reducing the State Ad Valorem Tax on real and personal property.

Amendment No. XXV to the Constitution of Alabama, 1901, known as Article XXII thereof, authorized the Legislature to levy, assess and collect an Income Tax in the State of Alabama.

Pursuant to this authority, the Legislature, by Act No. 169, H. 54, approved April 17, 1933 (General Acts 1933, Ex.Sess. page 150), provided for the levy, assessment and collection of an Income Tax in the State of Alabama. Said act was superseded by Section 345, and its various subsections, of the 1935 Revenue Act (Act No. 194, H. 324, approved July 10, 1935, General Acts, 1935, pages 256, 397). The presently applicable statutory provisions for the levy, assessment and collection of an Income Tax in the State of Alabama are found in Code of 1940, Title 51, Chapter 17, Sections 373–424.

Section 213 of the Constitution of Alabama, 1901, as amended by the Twenty-sixth Amendment thereto, known as Article XXIII thereof, among other things, authorized the issuance of warrants or bonds for the purpose of funding the floating indebtedness of the State of Alabama at the close of business on September 30, 1932.

The Legislature, pursuant to this authority, provided for the issuance of general obligation bonds of the State of Alabama to fund this floating indebtedness by Act No. 177, S. 6, approved April 17, 1933 (General Acts 1933, Ex.Sess. page 189), Sections 8 and 9 of which provided:

"Section 8. The warrants and/or other instruments issued under this act shall be a direct obligation of the State and the full faith and credit of the State is pledged to the prompt payment of the principal and interest thereof. The warrants and/or other instruments provided for by this Act shall be issued under the authority of the amendment to Section 213 of the Constitution of Alabama, known and designated as Article XXIII thereof. To create a sinking fund for the prompt and faithful payment of such warrants and/or other instruments, and interest thereon, the net proceeds of any income tax which may be levied by the Legislature pursuant to law, is hereby pledged and there is hereby appropriated for the payment of these warrants and/or other instruments and the interest thereon as they may mature, out of the general fund of the State, the amount necessary to pay the principal and interest in full as it matures and is due.

"Section 9. Said warrants and/or other instruments shall be entitled to the full benefit of the sinking fund provided by said Constitutional amendment."

By Act No. 50, H. 82, approved February 8, 1935 (General Acts, 1935, page 118), the Legislature provided for the issuance of refunding bonds of the State of Alabama for the purpose of refunding the bonds issued pursuant to Act No. 177, supra, Section 8 of which provides: "Section 8. Said refunding bonds shall be a direct and general obligation of the State of Alabama and the full faith and credit of the State are hereby pledged to the prompt payment of the principal and interest thereof as the same respectively becomes due. To create a sinking fund for the prompt and faithful payment of such bonds and the interest thereon, the net proceeds of any Income Tax which has been or which may be levied by the Legislature pursuant to law are hereby pledged, and there is hereby appropriated for the prompt payment of said bonds and interest thereon, out of the General Fund of the State, the amount necessary to pay the principal and interest in full as the same mature and become due,

and said refunding bonds shall be entitled to the full benefit of the sinking fund provided by the Amendment to Section 213 of the Constitution of Alabama, designated as Article 23 thereof."

By Act No. 157, S. 149, approved March 17, 1939 (General Acts, 1939, page 230), the Legislature required the issuance of $626,358.39 in interest-bearing warrants dated July 1, 1933, said warrants to be paid as provided in Section 2 thereof, which reads: "Section 2. The Treasurer of the State of Alabama is hereby directed to pay said warrants when issued out of any surplus of proceeds of Income Tax from time to time after provision has been made for the payment of the next two maturing installments of interest, and the next maturing installment on principal of refunding bonds as provided in the Act of the Legislature of 1935 approved February 8, 1935, and after provision has been made for the payment of any other lawful charges against the proceeds of said income tax."

This procedure was approved by this Honorable Court in Re Opinions of the Justices, 237 Ala. 382, 186 So. 724.

By Act No. 253, H. 382, approved August 25, 1939 (General Acts, 1939, page 421), the Legislature "appropriated out of the surplus of Income Tax, after provision has been made for the administration of said Act, and the payment at any time of the next two maturing installments of interest, and the next maturing installment of principal on warrant refunding bonds of the State of Alabama issued, or to be issued, pursuant to authority contained in Act No. 50 of the Legislature of Alabama passed at the Regular Session, 1935, and approved February 8, 1935, to the Property Tax Relief Fund such an amount as may be necessary for the replacement of any revenues lost by exemption of homesteads from all State ad valorem taxes, provided by Act No. 107 of the Legislature of Alabama, Special Session 1936–37, approved February 20, 1937." The constitutional validity of this act (then H. B. 382) was upheld by this Honorable Court in Re Opinion of the Justices, 237 Ala. 671, 188 So. 899. Said act is codified as Code of 1940, Title 51, Section 424.

(The statutes providing for the exemption of homesteads from State ad valorem taxation are Act No. 107, S. 5, approved February 20, 1937 (General Acts, 1936–

418

37, page 113), and Act No. 488, H. 964, approved September 15, 1939 (General Acts, 1939, page 702), which acts are codified as Code of 1940, Title 51, Section 15. The Property Tax Relief Fund Act is Act No. 127, S. 16, approved February 23, 1937 (General Acts, 1936–37, page 142), which is codified as Code of 1940, Title 51, Section 16.)

Code of 1940, Title 51, Chapter 17 (Income Taxes), Section 408, provides: "§ 408. Amortization of ad valorem tax.— Any surplus remaining from the proceeds of the tax imposed by this chapter after providing for interest and installment annual payments or annual amortization installments on the current debts of the state as of September 30, 1932, shall be applied to the reduction of the ad valorem state tax on real and personal property."

After the payment of the warrants issued pursuant to Act No. 157, supra; after provision has been made for the administration of Code of 1940, Title 51, Chapter 17, for the payment of the next two maturing installments of interest, and the next maturing installment of principal on the bonds issued pursuant to Act No. 50, supra, and the payment of the appropriation made by Act No. 253, supra, (Code of 1940, Title 51, Section 424, supra), there remains a surplus in the revenue derived from the Income Tax.

Question No. 1. Would the use of this surplus by me, as Governor of Alabama, to reduce the State Ad Valorem Tax on real and personal property, as directed in Title 51, Section 408, offend the provisions of Sections 21, 22, 42, 43, 72, 212, Amendment No. XXV, known as Article XXII, and Section 213, as amended by Amendment No. XXVI, known as Article XXIII, of the Constitution of Alabama, 1901, or any of them?

Question No. 2. Should your answer to question # 1 be in the negative, then would such reduction be applicable to taxes assessable as of October 1, 1940, and payable as of October 1, 1941, or would such reduction first become applicable to taxes assessable as of October 1, 1941, and payable as of October 1, 1942, in view of the provisions of Section 100 of the Constitution of Alabama, 1901?

Respectfully submitted,
FRANK M. DIXON,
Governor of Alabama.

Hon. Frank M. Dixon,
Governor of Alabama,
Montgomery, Alabama.
Dear Sir:

Responding to your inquiry No. 1, we respectfully submit the following:

The rate of taxation for state purposes has been fixed by the Legislature at "sixty-five one hundredths of one percent per annum on the assessed value of the taxable property within this state". Title 51, § 18, Code 1940. Section 214 Constitution of Alabama 1901.

The language of Title 51, § 408, Code 1940, quoted in your inquiry is but a general restatement of that found in the Income Tax Amendment to the Constitution, Article XXII, and in reference to this provision therein found concerning application of surplus to reduction of ad valorem taxes, it was said in Re Opinion of the Justices, 237 Ala. 671, 188 So. 899, 901, "this provision is not self-executing". Like observation is applicable to the general language of Code Section 408, supra.

As the law now exists the rate of taxation is that fixed in Title 51, § 18, Code 1940 hereinabove quoted. The Legislature has made no attempt to suspend or change this law. No machinery whatever has been provided for the application of any surplus to reduction of the ad valorem state tax. As previously observed Sec. 408 is but a general statement of like effect as the constitutional amendment, and like the latter is not self executing.

The Constitution of 1901, Section 21 provides "that no power of suspending laws shall be exercised except by the legislature". This section of our Constitution was given full force in State v. Justice, 200 Ala. 483, 76 So. 425, and Montgomery v. State, 231 Ala. 1, 163 So. 365, 368, 101 A.L.R. 1394, which latter case also lays stress upon Section 43 of our Constitution in connection with Section 21, and in which case it was observed: "the Legislature cannot authorize the suspension of a law by another agency, even in cases where it has power to suspend the law".

We do not mean to indicate the Legislature may not set up appropriate machinery for the purpose as set forth in Section 408, supra. But as no such provisions have been attempted no occasion is presented for a consideration of the character of legislation necessary to that end. Of

course, the Legislature may without regard to any matter of machinery simply decide to reduce the rate of taxation by amendment of said Section 18. But all of this is for consideration of the law making body.

Answering, therefore, your inquiry No. 1, we are of the opinion the action contemplated therein would run counter to Sections 21 and 43 of our State Constitution.

This conclusion renders unnecessary any response to inquiry No. 2.

Respectfully submitted,

LUCIEN D. GARDNER,
Chief Justice
WILLIAM H. THOMAS
VIRGIL BOULDIN
JOEL B. BROWN
A. B. FOSTER
J. ED LIVINGSTON
Associate Justices